Case number 21-33-42 Maribethe Ingram v. Joseph Regano et al. Oral argument not to exceed 15 minutes per side. Ms. Fair for the appellate. May it please the court. Good morning. Good morning. My name is Maria Fair and I represent Fred Bolden, who is the current Solon School District Superintendent, as well as Jared Regano, administrator of the estate of Joseph Regano, who was the district's former superintendent. I would like to reserve three minutes for rebuttal. This complaint filed by Maribethe Ingram alleges that back in 2017, she was restricted from volunteering and substituting at the district's Lewis Elementary School building following a report of sexual harassment that she made. What's the current status of the underlying state and federal retaliation claims? Are they just back in the district court? Is that where they are? So in this matter, the trial court denied immunity to these two administrators on the conspiracy to retaliate claim, as well as the state retaliation claim too. And those are what we are appealing here today. How about the federal one? The federal retaliation claim has been denied as well. But that's still back in the district court? It is. Okay. So, I mean, one of the things you're going to get a sense from, for me, for both of you, is I find this case just has gotten incredibly complicated and I'm just kind of trying to figure out what in the heck has happened here. So the current state of the world is that there's a triable issue of fact for summary judgment purposes on the federal retaliation claim, right? In other words, that's going forward with discovery? The discovery has been stayed pending this appeal in honor. So there is no discovery going forward yet in the federal matter. But won't discovery be allowed eventually? I mean, maybe they want to stay it because something happens here, you can settle the case, for example. But there's nothing that will prohibit discovery in the federal retaliation claim, right? There will be discovery in the federal claim in the federal matter, not only on retaliation, but also on sex discrimination, equal protection. However, every additional claim that is allowed to go forward and every claim for which immunity is barred presents additional resources. Do you really think so? I'm really struggling with that. This one, this does not look super complicated. This is not a typical Iqbal Twombly case where we've got a gazillion emails and you spend hundreds and thousands, well, millions of dollars getting the discovery. This is a pretty straightforward chronology and people said things, didn't say things, wrote emails, didn't write emails. But they're all going to apply to the state and federal retaliation claims, right? Your Honor, I think that allowing this case to go forward and affirming a denial of immunity would increase discovery costs and burdens tremendously on the remaining defendant, Fred Bolden, as well as the estate. And I think that, frankly, this, especially on the civil conspiracy claim, this is not warranted because the conspiracy to retaliate claim does not allege adverse action. And that is where the trial court made a mistake. In considering immunity here, the trial court looked at whether adverse action was pled following the independent investigation and the court assumed that it was. But in fact- The adverse action for purposes of retaliation, is that what you're- Yes, yes. Okay, so why is being told you can't be a sub anymore not an adverse action? That happened, according to the complaint itself, in 2017. So to be clear, Mrs. Ingram alleges that Michael Acomb, her building principal, restricted her from volunteering and substituting on December 15th, 2017, and that this restriction continued and in fact continues to this very day. She alleges that the 2018 disposition, and this is where it can get complicated, the 2018 internal disposition and then the subsequent independent investigation affirmed that initial 2017 restriction and found that it was warranted based on Mrs. Ingram's own misconduct. But there are no allegations in this complaint, there are no operative facts suggesting anything new happened in 2018 as a result of those- I just don't know the point you're making. You're trying to make the point that she might have a cognizable retaliation claim for the first decision, you know, saying you can't be a sub anymore, but later on that adverse action kind of evaporates? Is that the point you're getting at? She alleges that Michael Acomb, the building principal, restricted her. And although we don't agree that that's a materially adverse action- Wait, wait, wait, we just gotta stop there because I don't know if I'm interested in hearing anything more. If you're telling me you say to somebody you can't keep doing something in a job-related setting, you're calling that not an adverse action? There can't be a case out there that says that. From the district's perspective, she was allowed to substitute and volunteer in every other building, including- and she can still do it today. She can still volunteer and substitute in any other building but one. Because of that- I thought she went down the road of saying I'll only be a sub if I can be a sub in this one school and building, i.e. where my kids are. This is not the first time this has happened with a parent. It's got convenience, right? You go to school with your kids. You go home to school with your kids. You like being in the school where your kids are. Yes, that is what she alleges- What's your case that says saying you can't be a sub or can't work here anymore, here being the place you've been working, is not an adverse action? I would say that every case from this court's jurisdiction that discusses transfers as not being retaliatory, when a teacher is transferred from one building to another, even if they don't like that transfer, that is not necessarily retaliatory. But, Your Honor, here, the question is not whether Michael Acomb retaliated against her because Michael Acomb is not a defendant here. Michael Acomb is not alleged to have retaliated- I was just trying to understand your theory of no adverse action. That's what you started with. I'm just saying- And let me clarify that because that is an important point. Most of the evidence on both issues going to be brought out at some point anyway on the federal claim and the state claim. Your Honors, I would say that in discovery, if this retaliation claim does not go forward, and then the issue for the court, for the trial court at that point, will be on sex discrimination and equal protection. I want to get back to the adverse action point because I think that is critical here. Michael Acomb is not a defendant, so whatever he did on December 15th, 2017 is not a question of retaliation before this court or the lower court. The only defendants here, and these people are sued in their individual capacities, are Fred Bolden and now the estate of Joseph Fergano. And the allegations here are that they issued a disposition, an internal disposition, and then an external investigation. They participated in that in a way that was retaliatory against Mrs. Ingram. But the complaint alleges nothing about any new changes in the terms and conditions of her volunteering and substituting following the 2018 internal disposition or the independent investigation. The only possibly- Did she come back and start working again? She did substitute afterwards in other buildings. No, no, I'm asking in that building. No, she was never permitted to return to Lewis again after December 15th, 2017. And so the only restriction in this complaint, the only operative fact, is a restriction in 2017. The decisions made by Fred Bolden and Joe Regano in 2018 cannot constitute- But I mean, it's a 28-page complaint, all right? I went through it yesterday. It did not strike me as an Iqbal Twombly flawed complaint. It's just not what occurred to me. At the motion to dismiss stage, you don't know everything. We don't want plaintiffs saying things they can't say because they haven't had discovery. What we do want is notice pleading. We do want a theory. And we want enough facts to say the theory is plausible. How is it not plausible that folks that had done what they'd done to her by controlling the investigation, controlling what material gets to the decision maker, were manipulating the process? I just don't- That's plausible. It's very easy. It's very possible on discovery  you're dreaming this up. Nothing bad happened. Here's the emails. Here's everything that happened. That's what discovery's for. End of story. It doesn't go to trial. But I don't know how you can say it's not plausible given the other allegations. Okay. So I have several responses to this. Thank you, Your Honor. So in order to pierce the political subdivision immunity, Mrs. Ingram has to allege plausible operative facts alleging malice, recklessness. And these are not- These are not random interchangeable terms. They each come with their own a set of prerequisites. We all are in agreement. Those words are all over the complaint. Exactly. I assume your theory is, ah, that's conclusory. That's- I take it what you're trying to say? Yes. That might be a problem if you don't allege enough facts, i.e. you don't have a 28-page complaint that tells a story that allows these statements at the end. And all that's going on is, does this get to discovery? That's the question. It's not that you lose. It's not that it goes to a jury. But I'm just really puzzled by the idea this isn't enough to get discovery. So even accepting all the operative facts is true, Your Honor. What this plaintiff alleges at most is a mistake. And we will admit that. We will admit that Fred Bolden's coordination of some aspects of the external investigation should have been probably best left to administer by a different person. But there's nothing in this complaint suggesting that if somebody else had scheduled these interviews or anybody else- When a complaint has these facts, I allege sexual harassment. In response, they investigated me and suspended me and did not investigate the harasser. I don't have to read a lot more. Those are really astonishing allegations. And you're saying that's not plausible to get discovery? I must just say, I don't get it at all. Well, I'd like to distinguish for the purposes of this argument the allegations of malice. In her complaint, Mrs. Ingram alleges that malice here was specifically reflected by Fred Bolden's decision to communicate with Joe Regano, who told him to take care of this, and locate exhibits, and that this somehow reflects malice. And there's nothing in this complaint, though, alleging that they told a witness to lie or that they found comments suggesting bias by Fred Bolden against Mrs. Ingram or that exhibits were destroyed. Nothing here alleges that the outcome of this investigation would have been any different if a secretary had scheduled interviews or located exhibits instead. Okay. Thank you for your time. Thank you. We'll hear from the other side. May it please the court. My name is Casey Ingram, and I represent Mary Beth Ingram, who's a plaintiff before the lower court in Napoli here. This is an interlocutory appeal, and there is only one issue that's properly before this court, whether to affirm the district court's order that plaintiffs sufficiently pled facts to overcome defendant state law immunity defense at the pleading stage. And that order should be affirmed for three reasons. First, this court's repeatedly recognized that consideration of state law immunity is premature at the pleading stage. Second, defendant's argument about the retaliation claim was not raised before the district court and therefore is not preserved for appeal here. And finally, even if the court were to ignore those threshold issues and decide to address the arguments raised by defendants, a plaintiff had more than enough factual allegations in the complaint to get the discovery. What's your answer to her point that when it comes to the investigation as to those defendants, that there's not enough facts to have a plausible claim of maliciousness, for example, or whatever the other adjectives are that are required to pierce state immunity? So, Your Honor, I do have an answer for that. And to do that, I need to correct some statements made by defendants counsel. There were actually two complaints here, not one. So the first complaint that's alleged is December 14th, 2017. She complained of harassment. The very next day, she was told you have to leave the school and she was taken off the substitute list. But Mr. Regano, the superintendent, said you can still volunteer in Lewis Elementary. Then when they started the investigation, they said you're under investigation. And she said, wait a minute, where's the complaint? What did I do wrong? Show me the allegations. She repeatedly requested the allegations in the complaint. They did not give them to her. So she filed a retaliation complaint on February 28th. Okay, so I've read all this. I just want to hear the answer to what she said. That's what I want to hear. Okay. So the answer is that March 14th, 2018 disposition was one form of retaliation that showed malice because it was taken against Mrs. Ingram without ever providing her allegations. And it caused her to lose both her work. Malice is not showing her a written complaint about her? Not even coming up with a written complaint. There was no complaint ever written. I thought it was an oral complaint. According to the policy, there can't be an oral complaint. But wasn't it initially an oral complaint? Yes. And she asked for the allegations in that complaint because she was never given the oral complaint. Well, you can't give it. That's weird. She never came and they never said to her, this is the complaint against you. And so when they said you're under investigation, as she alleged in the complaint. What are the facts that show these particular defendants were steering the investigation materials and manipulating the investigation materials? What are the facts that support that? The facts in the complaint, she filed the retaliation complaint on February 27th, 2018. And then they, the district said, OK, we'll hire an independent investigator. The first thing that happened is Superintendent Regano sent an email to Fred Bolden and say, let's talk. Then he assigned Fred Bolden, who was the person being investigated to work directly with the independent investigator. She asked him, as alleged in the complaint, when she needed emails, she said, go get the emails. He's the one who pulled the emails. How do we know he pulled all the emails and didn't keep the ones out that caused him to look bad? She asked for video. He pulled the video. It was supposed to be for a 15 minute period of time. He only gave her three minutes of the time. And so these allegations showed. Is that last one in the complaint? Say again, sir. Is that last point you just made in the complaint? Yes, sir. I don't remember reading that 11 minutes and then they only gave three. It was, I believe, 15 minutes and only three of them were in there. What's the best case that you're relying upon to show that this is sufficient and should not have been dismissed? The Shively versus Green local school district case from 2014. That was a case where a young girl was being bullied at school and her parents kept complaining to the school district and saying, please follow the policy. Please do what the policy says and they wouldn't do it. And so eventually they filed a section 1983 claim. And this court said, first of all, we can't address state law immunity at the motion for judgment on the pleading stage because to require that would basically require plaintiff to prove summary judgment when she filed her complaint. And then they went on to say that when someone's asked to follow the policy and they repeatedly refuse to do it, that's reckless behavior. And reckless behavior takes away the state law immunity defense. But do you agree on motion to dismiss? We could dismiss if you don't allege, for example, that the state administrators did it maliciously. That would be a pleading failure, right? Unless I pledge that they did it in bad faith or they did it recklessly or they acted outside the scope of their authority. There are four different elements. You have to say that and it has to be plausible. That's fair game for motion to dismiss. But after that, it's not. Yes, Chair. So I don't have to at that the motion for judgment on the pleading stage as you stated earlier, Judge Sutton. I have to put out something that's plausible, but I don't have to prove every fact because it's hard to prove a state law immunity defense in a complaint to overcome it. But the district court found that when Mrs. Ingram alleged that Mr. Regano and Mr. Bolden, who were being investigated, directed and supervised the investigation into their own misconduct, that that was enough to overcome state law immunity defense at the pleading stage. And as to the retaliation and civil conspiracy claims, those were not raised before the district court in the motion for judgment on the pleadings. So just remind me to make sure I've got this straight. The federal retaliation claim is still in front of the district court. And how about the state retaliation claim? State retaliation claim is as well, Your Honor. It was never actually moved. Your friend on the other side misspoke.  is in front of us. It can't be, Your Honor, because it was never raised before the district court. It was never actually moved. So the district court stated in their order that the defendants never actually raised the retaliation claim in their motion for judgment on the pleadings. In the reply brief that the defendants submitted to this court, they actually stayed on the last page. They never raised retaliation and civil conspiracy until their reply brief before the district court. And Sixth Circuit precedent says that you cannot raise an issue in a reply brief. You have to raise it in the initial motion. Otherwise, the non-moving party doesn't get a chance to respond. So by not raising it in their initial motion, they waived any objection to the state retaliation and civil conspiracy claims. So those are going forward. All that's before the court here is to decide, do they get state law immunity? Do they have that defense? And there's no inextricably intertwined between those claims because the elements of retaliation and civil conspiracy are completely different from the elements for state law immunity. And so you could decide there is retaliation, there is enough to go forward on civil conspiracy, and then you could come up and say, you didn't plead enough to show to overcome state law immunity. But plaintiff did. Mrs. Ingram did plead enough to overcome state law immunity because not only did she plead that they handled the investigation into their own misconduct, which they're supposed to abstain from any involvement in that misconduct or in that investigation. That's enough to overcome the state law immunity at the pleading stage. Plus the fact that when she filed her retaliation complaint, they retaliated against her a second time with the March 14, 2018 disposition. That disposition was retaliatory because what it did is it said you're permanently barred from ever substituting in Lewis Elementary and you're permanently barred from volunteering there, which before that had not been the case. So they increased the penalty and they issued that disposition without giving her the allegations underlying that disposition or a chance to respond to it. And you could argue, OK, that's an oversight. And I would agree with that, except for the fact that she asked on January 29th, January 30th, January 31st, and February 1st, give me a complaint. They never did. When she filed the February 27th retaliation complaint, she said, I'm being punished not being allowed to work at Lewis Elementary and no one's told me why. And then two weeks later, six weeks after she asked for a complaint, they issue this 15 page or so disposition and report throwing out allegations she'd never even heard before. So I assume at the district court, any efforts at mediation came up short. There were no mediation efforts at district court. There was a mediation effort at the Sixth Circuit and basically the Sixth Circuit mediator said that the defendants weren't interested. All right, well, I think we've, I think we understand your argument. If you have anything else you think we really need to know, let us know. Otherwise, thank you. Thank you, Your Honor. We'll hear rebuttal. Senator Buttle, I would just like to address a few points. First, just to correct, just to correct the record. We certainly did address the elements of our retaliation before the trial court. In our motion for judgment on the pleadings, we started off our section on facts explaining. But you agree that the state and federal retaliation claims are still sitting back in district court. They are, and we would like this court- And it's a little unusual for us to be refereeing this predicate of the civil conspiracy claim. I mean, it's just, it's just, I don't know what happened to this case, but it's just very strange. We agree, Your Honor, but the civil conspiracy claim is for retaliation. That is the crux of- Yeah, no, that's what I'm mystified by, that we have the civil conspiracy for retaliation. When the retaliation federal and state claims are back in the district court. Proceeding for discovery. We would like this court to take pendant jurisdiction over the retaliation claim as well, because deciding a civil conspiracy to retaliate claim would address the retaliation- Is there a district court decision on the state retaliation claim that was appealed? The district court's decision on immunity specifically referenced adverse action, which is an element of retaliation. So the district court mistakenly hinged its decision on immunity on the presence of adverse action. And that leads me to my second point on rebuttal, which is that the complaint is long and detailed, but if you look at the allegations that are supposedly constituting malice, which plaintiff herself characterizes as a spirit of revenge, those allegations are not followed by any adverse action. So she alleges that Fred Bolden coordinated some interviews, scheduled witnesses, and after that, the only thing she alleges is that the decision, the external decision was unfavorable to her. An unfavorable decision does not plead materially adverse action sufficient to dissuade a reasonable person from engaging in protected activity. Unless the decision-making process was manipulated by the decision makers. Even, well, Your Honor, I will disagree with that because otherwise any reasonable person could then, the argument would be, well, any protected activity, any claim that I file, an unfavorable decision can be used to say, well, that's retaliation. Because it was manipulated. And a critical element of retaliation is materially adverse action, a change in the terms and conditions of her employment, her volunteering, and substituting, which was not alleged here. Nothing new happened after 2017. She was restricted from December 15th, 2017 until today from volunteering in that one building. Nothing changed. Thank you for your time. Okay. Thanks to both of you for your briefs and arguments. The case will be submitted.